Bruce's case for argument is 16-2354, Boundary Solutions v. Corelogic. Good morning. Bruce Wecker on behalf of Appellant Boundary Solutions, Inc. This is an appeal from an inter-part phase review in which the two patents at issue were invalidated, the relevant claims. The issues are whether the two references that were used to establish obviousness had two limitations which... On page 28 of the red brief, Corelogic says that on appeal you're presenting a new claim construction argument that speaks to the creation of a national parcel map database required by the U.S. Government, requires a special normalization process, and requires a national parcel boundary database to be used in searching for parcels through a jurisdictional look-up table. Where in the record did you raise those positions in front of the PTAB? Those are not positions that we're taking on this appeal. We're not raising any claims construction issues. There was some confusion in the opening brief. We addressed the issue of the normalization element. But it is purely to put in context the function of the jurisdictional look-up table, which is the only issue that we're raising on this appeal, which is that the... In its final decision, when the PTAB explained that Longley specifically references a look-up operation, it expressly recognized Boundary Solutions' candid admission that while there may be a difference in terminology, a look-up table serves the same purpose as an index. Why shouldn't we likewise treat that as an omission by your client regarding the look-up table? Well, if you read the argument in context, I was the attorney that did the argument. The statement about serving the same purpose is that it is one of the purposes that a look-up table can be used for. In this case, in this patent, it is used for additional purposes, including the arrangement of the entire database search protocol to engage in a two-stage search. Where in the look-up table is a jurisdictional look-up table to find a jurisdictional identifier, which then identifies a narrower geographic location, which in the preferred embodiment is a county, but in the claims is a jurisdictional database, which is then searched to find the selected parcel. On that second stage of the search, you attempt on page 37 of your opening brief to draw a new distinction between the cells in Longley's disclosure of grid indexing and jurisdictional boundaries in the claim look-up table. And you say the second stage of the search, which likely would include a spatial search, is not specified in the claims. Where in the record did you raise that second stage argument in front of PTAB? It's throughout the argument that the board, there were numerous references to the two-stage search. I think there's a portion of our reply brief where we collect all of those references. Okay, where is that, please? I'll let you do it on your response. In terms of that two-stage search as represented in the claims themselves, you see that the subpart E that is the primary focus of this appeal is searching a jurisdictional look-up table that's indexed to find the pertinent jurisdictional database. Where the jurisdictional identifier for the selected jurisdiction is located in the identified jurisdictional database thereafter accessed. Then the next step, step F, is the completion of the entire search protocol, which allows for the display of the selected parcel and parcels surrounding it. So that's why we say that there's no implementation steps in the two-stage search. There's no implementation of how that second stage occurs. But it is plain from the structure of the claim that it involves taking the jurisdiction, as I say, in the preferred embodiment, a county, and finding the parcel within that. And again, in the preferred embodiment, each county has already established through its tax assessor office a map that includes APNs that locate particular parcels. I don't want to confuse you, so I want you to look at page 37 of your blue brief when you come back up. Because I'm talking about that specific argument that you raise on that page and that distinction that you try to make. And you can tell me where that is in the record. So that subpart E has two limitations that we're discussing as missing in Harder and Longley. The first is the basic structure of a jurisdiction lookup table. And the second is the role that that lookup table plays in the claim where it finds a jurisdictional identifier that then is passed to DOJ. The second stage of the search. With respect to all of this, both of those limitations were addressed in the board's decisions over a course of less than two pages that span from page 17 to 19 in the decisions. That's appendix 17 to 19 with respect to the 946 patent. And you see that the analysis there does not address any of Boundary Solutions' arguments regarding distinctions between grid indexes and the index of the patent between an indexing and a jurisdiction lookup table. None of those arguments are addressed here, which is part of the basis for us contending that this is an inadequate specification of the reasoning for the board's decision that the prior art renders the patent obvious. And according to the Rendy and other cases, the board is required to lay out specifically its reasoning. Obviousness is sort of like the free speech concept of you know it when you see it. It's very difficult to focus in on exactly what leads one to believe that an invention is obvious. I guess in principle I understand your point, but it seems to me reading carefully the board's opinion, I mean they take each argument, specifically on the appendix 17 and 18 which you referred to. They take each of your arguments and they respond to it quite specifically. Presumably not necessarily to your satisfaction, but it seems to me reading through the opinion that they do identify the arguments you make, do cite the references, and do try to explain them. Based on the references and what they understand to have been your concessions during the oral argument, that there is a response. As I said, you may have a disagreement as to whether or not it's adequate, but there is certainly a response to each of the arguments you made, right? No. With due respect. Which one did they leave out? As we present the argument that the grid index, which is the closest index in Longley and Harder that comes to the two-stage search, we present the argument that it actually only portrays a one-stage search. But didn't they go on to say that there was expert testimony that talked about how the index, the look-up table is a kind of index, and they addressed the fact that the grid index is a one-stage search? You know, having different kinds of look-up tables and explained why it is that one ordinary skill in the art would understand that there could be a look-up table based on the teachings in the two references? What I believe that those two pages devolve down to is a statement that common sense will bridge that gap between jurisdiction look-up tables and look-up tables. Where is that? That is in the third point, which is page 18 to 19. I have the lengthy quote about Petitioner further explains that it's a combination of Longley and Harder teachers that suggest the recited look-up table. And then if you look at that quote, it's conclusory statements about why that is true with a single citation to good child declaration. If you look at paragraph 44 of good child's declaration, which is the only paragraph in the whole declaration in which he addresses the recited jurisdiction look-up table, you will see, and that's at appendix 417, that he doesn't provide any reasoning why one skill in the art would understand that there could be a look-up table. He says it would have increased the efficiency of the searching functions disclosed by the combined system of Harder and Longley. Well, all indexes do that. Our point is you can't, in a prior art reference, see a reference to index and automatically think that here's how you structure this parcel database with a jurisdictional look-up table that first finds the jurisdiction and then finds the parcel. The idea of invention here is that the combination of the jurisdictional identifier, which in the preferred embodiment is the FIPS number, plus an APN, which is already in all of the county's databases, those two pieces of information linked together give you a unique identifier for every parcel across the nation. You can use that to create a searching mechanism to find selected parcels. There is nothing in Longley or Harder that comes close to suggesting that kind of spark of invention. Am I correct in recalling that there is maybe a CBM pending on this particular patent? Is that correct? CBM? No, the board refused to institute those on the basis that there were no claims here that involved financial... Well, we're into your rebuttals, so why don't we hear from the other side and retain the rebuttal time. Thank you. May it please the court, Stephen Kinnaird for CoreLogic Inc. The board had substantial evidence to find that the two boundary solution patents were obvious over the Harder and Longley references. Indeed, the claimed invention involves no more than the application of standard database management techniques to particular data sets. Because the claim method organizes the data by jurisdiction, the claims simply affix the label jurisdictional to standard tools like index lookup tables, database identifiers, and segmented databases. That does not satisfy Section 103. How do you respond to Mr. Wecker's argument that the board didn't consider the arguments that his client made? In particular, faulting the analysis on pages 17 through 19 of the appendix. I think it did. First of all, it is correct that the two-stage search was not raised until the hearing under this court's precedent in Dell v. Acceleron. That's not enough, so it wasn't even before the board, and the claims do not directly require it, but it is actually disclosed in Longley. As far as the board had some trouble discerning what the arguments were, as it noted in its decision, but it actually recounted all of those arguments. And it stepped through not only the references Harder and Longley, but it pointed to the specific parts of the petition, which in turn elucidated the parts of the declaration that addressed these issues. It's not true that Dr. Goodchild only addressed the jurisdictional lookup table in paragraph 44. It began in 41 to 44, and it is clearly in the art. Longley discloses a jurisdiction lookup table with jurisdictional identifiers. It's at 1443 of the appendix. It's the state's table with a state FIPS identifier, and that identifier is used to search another table to identify records with matching identifiers. Harder discloses indexing to speed up searches of parcel databases. Longley discloses not only indexing generally, but specifically a two-stage search with a lookup table, and that's the discussion of the grid index. Now what a grid index is, and actually Mr. Wecker helpfully on 892 drew this analogy to the board, it's analogous to the old-fashioned road atlas. With a road atlas, as you might remember, the maps have a grid overlay and they're divided into boxes. They have a lookup table, the atlas would have a lookup table where you could identify the jurisdiction that you're wanting to travel to. If you want to go to Alexandria, it'll say page four, cell B3, and therefore it speeds up your search of the atlas because you don't have to look through the entire atlas, you just go to B3. That's exactly what Longley describes here on 1451 of the appendix, where he says that the grid location of the object is listed in an index, it's recorded in a list that's an index. This is a lookup table because it has columns and rows, it would be effectively the object identifier and the grid location in the cell. Longley says that the query searches the index for the grid location. Then the second stage of the search, you go to the actual cell and retrieve the object's geometry and attributes. This is exactly a lookup table, and Council did concede after talking about the road atlas analogy that the claimed lookup table is a form of index, and I don't think there could be any other dispute about that. A lookup table is a broader term, Dr. Goodchild testified to that, for example, you could have the old-fashioned times tables, you avoid computation by just having a lookup. The claims refer to a lookup table that is indexed for identification of the pertinent jurisdictional database. In this context, the lookup table is an index. Dr. Goodchild, in his declaration, talks about how, based on these references, that this is the use of indexing techniques to provide lookup functionalities. Just out of curiosity, what would it be if someone simply went to longitude, latitude, latitude, minutes, and seconds, and found exactly the same spot using that? I'm not sure I understand your question. Well, you can do grid coordinates for any place in the world. Right, that's right. And if I give you latitude such and such, this many minutes, this many seconds, and longitude, the same thing, you can get right to within a foot of something. So you could search those on a table just as you could in the index. In fact, it's interesting, in reply brief 17, talking about his two-stage search, and I think, contrary to the argument... What I'm saying is, wouldn't that be a one-stage search? No, because the first stage is the search of the lookup table, in the grid index situation. And then you're taking that grid identifier, you're going to the data for that cell, and then you're searching that. That's the second stage. So it is a two-stage search. But the first, what's key here, is the lookup table... You're not getting my question. I apologize, Your Honor. If I just go longitude and latitude, isn't that a one-stage search? Yes, if that were all that you did, if you had the longitude and latitude. But this is talking about where you need to actually find the object. I understand. And I think it is key that the lookup table in the grid index example in Longley, that first stage of the search is purely a textual search. The spatial search is later. So I think everything is taught by Longley and Harder. And it's also important to understand the key and uncontested points that Dr. Goodchild testified to about the background knowledge of one skilled in the art. And there are three, I think, that are important. First, the GIS commonly employed standard relational database software, all of which have indexing commands. Second, it was well-known in the art to partition a database into separate tables by jurisdictional levels, like states and counties. And third, indexing was just well-known in the art. And BSI's expert, Huxholt, specifically conceded that it was common to configure indexes as tables and for indexes to be used to search other locations in the database. So that's why we say all that we have here is the application of a standard technique to a particular type of data. And they're just saying, well, this type of data is stored as jurisdictional, so we're going to call it a jurisdiction lookup table, call it a jurisdictional identifier, call it a jurisdictional database. But I don't think that Section 103 doesn't allow you, simply by affixing labels to standard tools, to have a patent that's considered obvious over prior art. So there's really no question here. The board did not resort to common sense as in Arendi to supply a missing claim limitation. It only looked to common sense as one source of a motivation to combine these references, because anyone skilled in the art with large databases of this kind is going to want to enable fast searches. So for all these reasons, we think this court should affirm the board. Unless the board has further questions. Thank you. With respect to page 27 of the reply brief and the two-stage search issue of whether it was waived, they're listed as a series of references. During the argument, I didn't understand CoreLogic to be arguing that the waiver goes back to that it was only brought up at the hearing. That was not an argument that was briefed. I believe the board certainly didn't rely on that to discount and not address that argument. They're also just quickly searching the appendix at appendix 2019. That's one of the patent owner's responses that discusses the process in which that patent specification uses the county press number to isolate portions of the database, which would be further used to then search for this specific parcel of interest. 2019? 2019. It's not in our appendix. I don't have it. Oh. Okay. Well, I guess I'm working on a different electronic version. If the court is interested, we could supply that response. I also wanted to address the argument that counsel is making about whether this is a missing limitation or a situation where there's a combination that's being supplied, motivation to combine. Our argument is not at all about motivation to combine, if you read all our briefs. We do not contend that Longley and Harder are not combinable in this circumstance. What we contend is that if you look at Longley and Harder, Longley has one reference to indexing. It's indexing fields within its single county database. It's not a jurisdiction lookup table. It's not indexing defined database. There's a single database there. Longley is what they rely on more directly to supply the multi-jurisdictional aspect of this, which is using an index to get to a jurisdictional identifier that then is used to isolate a portion of the database to be searched. In that respect, the best index, Longley is a textbook. It describes, in general, a lot of different indexes. R-trees, quad-trees, that everybody understands is not relevant to this case. The best index that they rely on is the grid index. If you read the two pages of the board's decision, they have a quote from Longley of one line about this grid index, which we think actually proves that it's a one-stage search, but there's no analysis there of why the grid index of Longley is not applicable to this patent. There is no sense that you can use that grid index as a jurisdictional lookup table. A grid index has rectangles. That's how that whole grid index works. In this patent, coming up with a jurisdictional index, think about it as to identify a jurisdiction, like a county or a city. It would be highly unusual that those would be in the nature of a rectangle. If they're not in the nature of a rectangle, grid indexing doesn't work. The idea of grid indexing is to place this mesh to divide out the map, and there's a whole discussion of at what resolution you apply that mesh. It's going up and down, and objects are located. They have an identifier. You don't need to use the grid to identify the object. What it says is you find the object based on its object ID. Essentially, it's XY coordinates, longitude, latitude. Then you pull out, for further analysis, object geometry, its relation to other objects, and a whole bunch of information. But that's after the search is done. You've already found the object. It only takes one step to do it. Thank you. We thank both sides, and the case is submitted.